IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BLAND KELEMS                                                     PLAINTIFF

      V.                             Case No. 2:14-CV-2265

CAROLYN W. COLVIN, Commissioner,
Social Security Administration                                       DEFENDANT

### MEMORANDUM OPINION

Plaintiff, Bland Kelems, seeks judicial review of a decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the provisions of Title II and Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). Plaintiff has exhausted his administrative remedies, and therefore, pursuant to 42 U.S.C. § 405(g), judicial review is now appropriate. After having reviewed the record for the purpose of determining whether the Commissioner's decision is supported by substantial evidence, the Court **AFFIRMS** the decision of the Commissioner.

### I. Procedural Background

Plaintiff filed his applications for DIB and SSI on December 15 and December 29, 2009, respectively, claiming disability beginning February 1, 2006, due to bipolar disorder and enlarged blood vessels. (Tr. 252-57) The State Disability Determination Services denied Plaintiff's applications initially and upon reconsideration. (Tr. 112-18, 120-24) At Plaintiff's request, an Administrative Law Judge (the "ALJ"), Hon. Harold D. Davis, conducted a hearing on November 16, 2011, at which Plaintiff and Dianne G. Smith, a vocational expert, testified. (Tr. 29-47) Plaintiff

was represented at the hearing by his attorney, Michael Sherman. (Tr. 29)

By written decision dated February 2, 2012, the ALJ found that Plaintiff had the following severe impairments: arteriovenous malformation and borderline intellectual functioning. (Tr. 95) The ALJ further found that Plaintiff's depression was not severe enough to contribute to disability. (Tr. 95) After reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or medically equal the level of severity of any impairment listed in the Listing of Impairments found in 20 C.F.R. Part 404, Subpart P, Appendix I. (Tr. 96)

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that the claimant can only occasionally bend, stoop or squat. (Tr. 96) The ALJ further found that Plaintiff would be limited to jobs that involve simple tasks and simple job instructions. (Tr. 96) The ALJ concluded that Plaintiff is capable of performing his past relevant work as a small products assembler as this job does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 101) The ALJ concluded Plaintiff was not under a disability (as defined in the Social Security Act) from the alleged onset date through the date of the decision. (Tr. 101)

On February 21, 2013, the Appeals Council vacated the ALJ's February 2, 2012 decision and remanded the case to a different ALJ for further proceedings. (Tr. 108-110) Specifically, the Appeals Council directed the ALJ to give further consideration to Plaintiff's maximum RFC, adhere to Social Security Rulings and Regulations for any conclusions reached about past relevant work, and obtain supplemental evidence from a vocational expert to clarify the effects of the assessed limitations on the claimant's occupational base. (Tr.110)

Administrative Law Judge (the "ALJ"), Hon. David J. Manley, conducted a second hearing

on August 22, 2013, at which Plaintiff and Charles D. Turner, a vocational expert (the "VE"), testified. (Tr. 48-85) Plaintiff was represented at the hearing by his attorney, Michael Sherman. (Tr. 48)

By written decision dated October 16, 2013, the ALJ found that Plaintiff had the following severe impairments: arteriovenous malformation, headaches, varicose vein pain, right lower extremity lymphedema, obesity, borderline intellectual functioning, social phobia, and major depressive disorder. (Tr. 11) The ALJ further found that Plaintiff had the impairments of provisional alcohol abuse and history of cannabis abuse (allegedly in remission), however, he found these were "non-severe" as they did not result in any discernible functional limitation. (Tr. 11) After reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or medically equal the level of severity of any impairment listed in the Listing of Impairments found in 20 C.F.R. Part 404, Subpart P, Appendix I. (Tr. 12)

The ALJ found that Plaintiff retained the RFC to perform work at the sedentary exertional level. (Tr. 14) The ALJ found Plaintiff could lift no more than 10 pounds at a time, occasionally lift articles like docket files, ledgers and small tools, sit approximately 6 hours out of an 8-hour workday, stand/walk no more than 2 hours out of an 8-hour workday; no significant stooping, crouching, bending is required. The ALJ also found Plaintiff has good use of his hands and fingers for repetitive action, but is limited to unskilled work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, contains few variables, requires little judgment, and any supervision required would need to be simple, direct and concrete. (Tr. 14)

The ALJ concluded that Plaintiff is not capable of performing his past relevant work as a

landscape laborer and a lubrication servicer. (Tr. 20) However, the ALJ concluded that Plaintiff is capable of making a successful adjustment to other sedentary work that exists in significant numbers in the national economy, such as, assembly work or inspecting work. (Tr. 21) The ALJ concluded Plaintiff was not under a disability (as defined in the Social Security Act) from the alleged onset date through the date of the decision. (Tr. 21)

Plaintiff requested a review of the ALJ's unfavorable decision by the Appeals Council. (Tr. 5) This request was denied on December 11, 2014. (Tr. 1-4) The ALJ's decision therefore became the final decision of the Commissioner, and Plaintiff's administrative remedies were exhausted. (Tr. 1) Plaintiff subsequently filed his Complaint herein seeking judicial review of the Commissioner's decision. (Doc. 1) Both parties have filed briefs, and this case is before the Court for decision. (Docs. 9, 10)

## II.  Standard of Review and Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if

after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if she reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Analysis

The ALJ in this case found Plaintiff was not disabled and had the RFC and capability to

successfully adjust to other unskilled occupations performed at the sedentary level that exist in significant numbers in the national economy with certain restrictions. (Tr. 21) Plaintiff alleges that the ALJ erred by: (1) failing to properly assess Plaintiff's RFC, and (2) failing to properly phrase the hypothetical question to the VE.

### A.  RFC Determination

The ALJ determined Plaintiff has the RFC to perform sedentary work, except that he was limited to unskilled work where interpersonal contact was incidental to the work performed, where the complexity of tasks was learned and performed by rote, contained few variables, and required little judgment, and where any supervision required would need to be simple, direct, and concrete. (Tr. 14) Plaintiff contends the ALJ failed to properly take into account his headaches and mental impairments by discounting them due to the lack of consistent treatment commensurate with Plaintiff's subjective complaints. Plaintiff further contends his GAF scores indicate he is not mentally stable enough to work.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. A disability claimant has the burden of establishing his or her RFC. *Vossen,* 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller*, 784 F.3d at 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir.

6

2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

The ALJ is required to consider all the evidence relating to Plaintiff's subject complaints, including: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitation and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and, (5) function restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In so doing, the ALJ must also consider the claimant's prior work record, observations made by third parties, and the opinions of treating and examining physicians." *Polaski*, 739 F.2d at 1322.

An ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them. *Id*. However, "[a]n ALJ . . . may disbelieve subjective reports because of inherent inconsistencies or other circumstances." *Wright v.* Colvin, 789 F.3d 847, 853 (8th Cir. 2015) (*citing Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (quotation and citation omitted). The Eighth Circuit has observed, "[o]ur touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

At the hearing, Plaintiff testified that he has headaches "all the time," and they have gotten worse since 2010. (Tr. 54, 69) Plaintiff stated he takes a baby aspirin daily and Aleve or ibuprofen for his headaches. (Tr. 55) On April 29, 2006, Plaintiff was admitted to St. Bernard's Medical Center complaining of a sudden onset of burning pain in his left face and neck. (Tr. 481) Plaintiff reported no prior history of similar symptoms, and the admitting physician noted only mild discomfort, no acute distress, normal affect, clear speech, and Plaintiff responded appropriately to questions. (Tr. 481).

On May 2, 2006, Plaintiff returned to St. Bernard's after a brain MRI which showed no evidence of intracranial bleed, stroke or thrombosis, however, prominent veins were seen bilaterally. (Tr. 444) Plaintiff reported that his headache had slightly improved, and he was in no distress with normal knowledge, attention, and concentration. (Tr. 444) On May 9, 2006, Plaintiff had a consultation with Dr. Ali Krisht for his headaches. (Tr. 542-43) Plaintiff reported to Dr. Krisht that pain medication helps relieve the headaches when they occur. (Tr. 542)

The evidence in the record shows that Plaintiff did not seek treatment for his headaches again until he underwent a consultative general physical examination by Dr. Brian Oge in March 2010 in conjunction with his disability claims. (Tr. 655) At that time, Plaintiff reported frequent headaches with some "bringing him to tears." (Tr. 655) Yet, there is no other evidence of Plaintiff seeking treatment for headaches until January 28, 2012 when he presented to the emergency room in Mena, Arkansas, complaining of leg pain and headache. (Tr. 841) Plaintiff was given Excedrin and advised to follow up with his PCP for his headaches. (Tr. 850) In August, 2012, Plaintiff presented at the ER complaining of sharp pains in his head and was again advised to establish care with a physician. (Tr. 891) The ALJ noted, and Plaintiff agreed, that Plaintiff never established care with a physician as advised for his headaches, and he did not seek any mental health treatment since 2008. (Tr. 17)

Plaintiff argues that just because his headaches are not so debilitating as to send him to the emergency room does not mean they would not interfere with his ability to work. (Doc. 9, p. 17) Plaintiff further states that Dr. Oge advised him to get testing for his arteriovenous malformation which he says "are apparently associated with his headaches" but he couldn't get to Little Rock for the testing. (Doc. 9, 17)

Nowhere in the record is there any evidence that his arteriovenous malformations are causing

any of his reported headaches. Plaintiff was repeatedly advised to stop smoking, reduce his caffeine intake, lose weight and establish care for his headaches and mental impairments. Further, none of the treating or consulting physicians suggested any work limitations resulting from his headaches. Moreover, Plaintiff has the burden of establishing his RFC. *See Vossen*, *supra*, at 1016.

Plaintiff's statements that he couldn't afford medications to treat his headaches or mental impairments is called into question by the fact that he admitted he was working "odds and end jobs" during 2006-07 when he initially applied for disability benefits (Tr. 58); he has consistently and continuously purchased cigarettes; and, up until 2010 he was purchasing marijuana and alcohol. (Tr. 57, 59) Plaintiff admits he had not received mental health treatment since 2008 and had demonstrated a history of being able to hold unskilled jobs. (Doc. 9, p. 18) He notes, however, he left some jobs due to arguments with his superiors, including one incident where he threatened his boss with a shotgun and was hospitalized. Additionally, Plaintiff contends his GAF scores reflect his mental instability, and he points to Dr. Moskow's finding that he would have difficulty staying on the job and would work more slowly than his peers.

On December 29, 2007, Dr. Tracy Tevyaw conducted a psychiatric consultative examination at the request of the State of Rhode Island Disability Determination Services. According to Dr. Tevyaw, Plaintiff attributed most of his inability to work to his enlarged blood vessels in his brain. (Tr. 575-76) Dr. Tevyaw found Plaintiff met the criteria for Social Phobia, Post-traumatic Stress Disorder, and Adjustment Disorder with Anxiety and assigned a GAF score of 53 indicating moderate impairment in some areas. (Tr. 576-77) Dr. Tevyaw recommended behavioral therapy for Plaintiff's psychological problems. (Tr. 577) There is no evidence in the record that Plaintiff ever sought any type of behavioral therapy for his mental impairments.

On October 9, 2008, Plaintiff was prescribed Celexa for depression at the Thundermist Health Center. (Tr. 581) Upon his return on November 6, 2008, his progress notes reported he was doing well, and his depression was near remission. (Tr. 580) It appears the medication was working, but it is apparent that Plaintiff discontinued the medication at some point prior to March 2010.

On March 15, 2010, a mental evaluation was performed by Dr. Sheree Moskow for the Arkansas DDS. Dr. Moskow diagnosed Plaintiff with Social Phobia and Major Depressive Disorder assigning a GAF of 35-45. (Tr. 601) Her prognosis was that his condition was not expected to change as he was not in treatment or on any medication. (Tr. 601) Dr. Moskow noted that Plaintiff's mental impairments did not significantly impact his ADL's, and he could communicate in an intelligible and effective manner. (Tr. 601-02) Dr. Moskow noted Plaintiff could complete tasks if they are within his ability and comfort zone, although he has trouble persisting over time and would likely work slower than his peers. (Tr. 602)

GAF scores are subjective determinations representing the clinician's judgment of the individual's overall level of functioning. *Jones*, 619 F.3d at 973 (internal citations omitted). The failure to reference a GAF score does not, in and of itself, justify remand. *Id*. (internal citations omitted). Moreover, the Commissioner has declined to endorse GAF scores for use in social security disability determinations, and has indicated that such scores do not directly correlate with the severity requirements of the mental disorders listings. *Id*. (internal citations omitted). An ALJ may properly give greater weight to medical evidence and testimony than to GAF scores where the evidence so requires. *Id*. (citing *Hudson ex rel. Jones v. Barnhart*, 345 F.3d 661, 666 (8th Cir. 2003).

It is well established that an ALJ may properly consider the claimant's noncompliance with a treating physician's directions, *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001),

including failing to take prescription medications, *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999), and to seek treatment, *Comstock v. Chater*, 91 F.3d 1143, 1146-47 (8th Cir. 1996). *See also Banks v. Massanari*, 258 F.3d 820, 825-26 (8th Cir. 2001) (ALJ properly discounted claimant's complaints of disabling depression as inconsistent with daily activities and failure to seek additional psychiatric treatment). Pursuant to 20 C.F.R. §§ 404.1530(a, b), 416.930(a, b), a claimant won't be found disabled if he refuses to follow a prescribed medical treatment without a "good reason." *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995); *Brown v. Heckler*, 767 F.2d 451 (8th Cir. 1985). In this case, Plaintiff failed to establish treatment in accordance with his treating physician's recommendations for his headaches and his mental impairments without establishing a good reason for failing to do so.

Plaintiff contends he could not afford to seek treatment or purchase medications. A lack of funds may justify a failure to receive medical care. *Osborne v. Barnhart*, 316 F.3d 809, 812 (8th Cir. 2003). A lack of funds alone, however, will not excuse a claimant's failure to obtain treatment or follow medical advice. As noted just above, a claimant who fails to treat a remediable condition without good reason is barred from entitlement to benefits. 20 C.F.R. §§ 404.1530, 416.930. Generally speaking, a lack of evidence that a claimant attempted to find any low cost or no cost medical treatment for his alleged pain and disability is inconsistent with a claim of disabling pain. *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992). No such evidence exists in this case.

The ALJ noted that Plaintiff was obese, and he considered the effects of Plaintiff's obesity when determining his RFC. (Tr. 17) Plaintiff testified that he could sit up to 6 hours out of 8 hours. Plaintiff testified that he takes care of his grandmother, plays guitar, and plays video games. (Tr. 54, 57, 60) In a Third-Party Function Report, Plaintiff's grandmother stated Plaintiff talks to friends on

the computer or the phone on a daily basis, and he had no problem with personal care, preparing meals, or doing laundry. (Tr. 305-10) None of his treating doctors suggested his weight imposed any additional work-related limitations, and he did not testify that his weight imposed additional restrictions. *See Anderson v. Barnhart,* 344 F.3d 809, 814 (8th Cir. 2003). Additionally, Plaintiff testified that the pain in his legs and the headaches is all that keeps him from working. (Tr. 70)

Accordingly, the Court finds that the ALJ did not err in his assessment of Plaintiff's RFC. The ALJ's determination that Plaintiff can perform sedentary, unskilled work where interpersonal contact is incidental to the work performed, the complexity of tasks are learned and performed by rote, contain few variables, require little judgment and where supervision is simple direct and concrete is supported by substantial evidence.

### B. Vocational Expert Testimony

Plaintiff contends the ALJ erred by failing to include Plaintiff's headaches, mental impairments and obesity in the hypothetical that was presented to the VE at the hearing. "Testimony based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision." *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (quotation omitted). Hypothetical questions should "set forth impairments supported by substantial evidence [on] the record and accepted as true." *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) (quotation omitted), and "capture the 'concrete consequences' of those impairments." *Lacroix*, 465 F.3d at 889 (*quoting Roe v. Chater*, 92 F.3d 672, 676-77 (8th Cir. 1996).

Given that none of Plaintiff's doctors reported functional or work related limitations due to his headaches, there was good reason to question Plaintiff's credibility. *See Eichelberger v. Barnhart*, 390 F.3d 584, (8th Cir. 2004). Under the facts of this case, we cannot say that the ALJ

improperly weighed the credibility of Plaintiff's claims. *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (none of the claimant's treating physicians opined the claimant was so impaired or disabled that the claimant could not work at any job). Additionally, as previous stated, Plaintiff failed to seek out treatment and/or follow up on his physicians' recommendations regarding his headaches and mental impairments.

"The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). The ALJ's hypothetical question included all the limitations found to exist by the ALJ and set forth in the ALJ's RFC determination. *Id*. Based on our previous conclusion that the ALJ's RFC findings are supported by substantial evidence, we hold that the hypothetical question was proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits. *Id.*, *see also Lacroix*, 465 F.3d at 889.

### V. Conclusion

For the foregoing reasons, the ALJ committed no reversible error and his decision is supported by substantial evidence on the record as a whole. The ALJ's decision is accordingly **AFFIRMED**. Plaintiff's case is hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED** this 22nd day of February, 2016.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE